# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **CHANTA LONDON,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | **C.A. NO. 4:12-cv-3011** |
| | § | **(JURY DEMAND)** |
| **ROSHELL GUMS, a/k/a ROSCHELL** | § | |
| **D. WARD, a/k/a ROSCHELL** | § | |
| **REAVELY, d/b/a TDA** | § | |
| **INVESTIGATIONS, d/b/a THOMAS,** | § | |
| **DIXON, ASSOCIATE** | § | |
| **INVESTIGATIONS, d/b/a THOMAS,** | § | |
| **DIXON & ASSOCIATES; ANTONIO** | § | |
| **THOMAS; FRANK GIBBS, JR.;** | § | |
| **FREDERIC THOMAS; ANTHONY** | § | |
| **KENNEDY; SHARON DAVIS, d/b/a** | § | |
| **SET 'EM FREE BAIL BONDS and** | § | |
| **SET 'EM FREE BAIL BONDS, INC.,** | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND <u>PRELIMINARY AND PERMANENT INJUNCTIONS</u>

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, CHANTA LONDON, (hereinafter referred to as "Ms. London" or the "Plaintiff"), Plaintiff in the above styled case, and makes this her Plaintiff's Original Complaint and Application for Temporary Restraining Order and Preliminary and Permanent Injunctions against ROSHELL GUMS, a/k/a ROSCHELL D. WARD, a/k/a ROSCHELL REAVELY, d/b/a TDA

INVESTIGATIONS, d/b/a THOMAS, DIXON, ASSOCIATE INVESTIGATIONS, d/b/a THOMAS, DIXON & ASSOCIATES ("TDA Investigations"); ANTONIO THOMAS ("A. Thomas"); FRANK GIBBS, JR. ("Gibbs"); FREDERIC THOMAS ("F. Thomas"); ANTHONY KENNEDY ("Kennedy"); SHARON DAVIS, d/b/a SET 'EM FREE BAIL BONDS ("Davis"); and SET 'EM FREE BAIL BONDS, INC. ("Set 'Em Free")(TDA Investigations, A. Thomas, Gibbs, F. Thomas, Kennedy, Davis, and Set 'Em Free hereinafter collectively referred to as the "Defendants") and for cause of action would show as follows:

## I.

## <u>Parties</u>

1.  Plaintiff is an individual residing in Houston, Harris County, Texas.

2.  Defendant Roshell Gums is an individual residing in the State of Texas and may be served by serving her at her principal place of business located at 8300 Bissonnet, Suite 215 and/or 230, Houston, Texas 77074, or at her principal place of residence located at 14814 Perthshire Drive, Apt. 108, Houston, Texas 77079, or wherever she may be found.

3.  Defendant Antonio Thomas is an individual residing in the State of Texas and may be served by serving him at his principal place of business located at 8300

Bissonnet, Suite 215 and/or 230, Houston, Texas 77074, or wherever he may be found.

4.  Defendant Frank Gibbs, Jr. is an individual residing in the State of Texas and may be served by serving him at his principal place of business located at 8300 Bissonnet, Suite 215 and/or 230, Houston, Texas 77074, or wherever he may be found.

5.  Defendant Frederic Thomas is an individual residing in the State of Texas and may be served by serving him at his principal place of business located at 8300 Bissonnet, Suite 215 and/or 230, Houston, Texas 77074, or wherever he may be found.

6.  Defendant Anthony Kennedy is an individual residing in the State of Texas and may be served by serving him at his principal place of business located at 8300 Bissonnet, Suite 215 and/or 230, Houston, Texas 77074, or wherever he may be found.

7.  Defendant Sharon Davis is an individual residing in the State of Texas and may be served by serving her at her principal place of business located at 3206 Houston Avenue, Houston, Texas 77009 or at her principal place of residence located at 118 Oryan Court, Houston, Texas 77015.

8. Defendant Set 'Em Free Bail Bonds is a Texas corporation with its principal place of business located in Houston, Harris County, Texas and may be served by serving its registered agent, Brett Green, at its registered address located at 1302 Waugh Drive, # 336, Houston, Texas 77019, or wherever he may be found or by serving its President/Director Sharon Davis, at its principal place of business located at 3206 Houston Avenue, Houston, Texas 77009, or wherever she may be found.

## II.

## Jurisdiction and Venue

9. This Court has jurisdiction under 28 U.S.C. § 1331 in that this civil action arises under the laws of the United States, in particular under the provisions of the federal Fair Debt Collection Practices Act codified at 15 U.S.C. §§ 1692, *et seq*.

10. The Defendants are also liable to the Plaintiff pursuant to the laws of the State of Texas, which claims may be brought under the supplemental and ancillary jurisdiction of this Court under 28 U.S.C. § 1367(a).

11. This Court has venue under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Texas, Houston Division.

12. This Court has personal jurisdiction over the Defendants, because they are residents of the State of Texas.

### III.

### **Background Facts**

13. Ms. London's husband was arrested in the fall of 2011, and bond was set at $20,000.00.   Sometime in December of 2011, Ms. London signed a guaranty of a bail bond to obtain his release from jail.  The surety on the bond is Set 'Em Free.  The downpayment that Set 'Em Free charged was $750.00, and Ms. London and her husband made additional weekly payments of between $50.00 and $100.00 for months until they believed they had paid the bond fee in full.  In about March of 2012, Mr. London appeared for sentencing, fulfilling the appearance obligation under the bond.

14. In August of 2012, Set 'Em Free and Davis called Ms. London at work demanding that she come in to pay the remaining balance of the bond fee. Ms. London told the representative she could not take personal calls at work and could be fired for receiving such calls.  Ms. London stated that the bond fee had been paid in full.  The representative told Ms. London that Set 'Em Free had been charging additional late fees and other charges and the balance was not paid in full.  The representative further told Ms. London that if she did not pay

the balance immediately, Set 'Em Free would request issuance of a warrant for her arrest for the nonpayment.  Ms. London told the representative that she did not have funds to pay at that time as her husband was not working and she had children to support.  She also asked the representative to provide her with verification of the debt and her payments on the debt.

15. Shortly after this call in August, Set 'Em Free and Davis called Ms. London again, making the same demand and same threats.  Ms. London repeated that she could not receive those personal calls at work and could be fired for them.

16. Set 'Em Free and Davis entered into a collection agreement with TDA Investigations for collection of their defaulted bond accounts.  One of the defaulted bonds that Set 'Em Free and Davis assigned to TDA Investigations for collection under that collection agreement was the bond for Ms. London's husband.

17. TDA Investigations is a sole proprietorship of Roshell Gums, doing business as "TDA Investigations," "Thomas, Dixon, Associate Investigations," and "Thomas, Dixon & Associates," with assumed name certificates on file in Harris County, Texas for each of those assumed names.  On its website, TDA Investigations represents that A. Thomas is the "CEO," Gibbs is the "President,"

and F. Thomas is the "Director of Operations/VP."  Kennedy represents himself as the "Director of Bonding" of TDA Investigations.  A. Thomas, Gibbs, F. Thomas, and Kennedy are collectively referred to hereinafter as the "TDA Officers."  The TDA Officers oversee all of the collection operations of the debt collectors employed by TDA Investigations.  They oversee and are in charge of all training programs of debt collectors and are directly responsible for the day-to-day operations of TDA Investigations as a collection agency.

18. TDA Investigations began collecting on the bond for Ms. London's husband in September of 2012.  A representative of TDA Investigations who identified himself as "Investigator Burley" called Ms. London's friends and family and disclosed to them that Ms. London was being investigated for theft of services and for criminal bond forfeiture.  Investigator Burley left messages on Ms. London's voicemail and with her employer stating the same and threatening to have a warrant for her arrest issued if she failed to immediately pay bond fees that were allegedly due.  When Ms. London called TDA Investigations' phone number left on her voicemail, she was told by Investigator Burley and later by Kennedy that she had committed theft of services and a crime by failing to pay the bond fees and that if she did not pay the fees immediately, they would file a "capias" with the Harris County District

Attorneys' Office requesting issuance of a warrant for her arrest. Kennedy represented that TDA Investigations was a licensed investigation firm, not a debt collector. Kennedy expressly represented to Ms. London that TDA Investigations was not governed by or subject to the federal Fair Debt Collection Practices Act or other collection laws and was not a debt collector. Kennedy represented that the agents and investigators at TDA Investigations were

19. After the conversation with Investigator, TDA Investigations' representatives continued to make multiple, repeated and continuous calls to Ms. London at work and at her home, leaving detailed message disclosing that the call was about a debt and stating that there was a criminal investigation ongoing into Ms. London as a result of the bond forfeiture.

20. The Defendants' conduct caused Ms. London embarrassment from the repeated calls and the nature of the frightening threats of the Defendants disclosed to her co-workers, friends and family. The Defendants' calls damaged her business, credit, and personal reputation. The Defendants' conduct also caused Ms. London substantial anxiety, fear, and mental anguish. Her mental anguish was so severe that she was unable to perform her normal and ordinary work and home life duties for several hours and in some instances for days after

each phone call.  Ms. London was unable to sleep at night, replaying the collection calls in her mind, thinking about the threats and the fear and embarrassment of having police sent out to arrest her on a warrant.

## IV.

## Causes of Action

## A.  Apparent and Actual Agency/Ratification

21. The joint and several liability and/or the availability of remedies to the Plaintiff from each of the Defendants is established by the following:

Apparent and Actual Agency:

22.  The employees and agents of TDA Investigations were at all times acting within the course and scope of their employment.

23.  The collectors and employees and agents of TDA Investigations were under the direct supervision and control of the other Defendants at all times relevant to this matter.

24.  Davis and Set 'Em Free gave TDA Investigations and the TDA Officers express and implied authority to act as their agents in collecting on Ms. London's alleged debt and allowed TDA Investigations and the TDA Officers to hold themselves out as having the authority to act as their agents.  The actions of the collectors, employees and agents of TDA Investigations and the TDA Officers are

imputed to Davis and Set 'Em Free.

Ratification:

25.  Davis and Set 'Em Free ratified the acts of TDA Investigations and the TDA Officers, in that they gave their acts: (1) approval by act, word, or conduct; (2) with full knowledge of the facts of the earlier acts; and (3) with the intention of giving validity to the earlier acts.

## B. Violations of the FDCPA

26.  The Plaintiff is a consumer as defined by 15 U.S.C. § 1692a(3).  TDA Investigations and the TDA Officers (TDA Investigations and the TDA Officers hereinafter referred to as the "Third Party Debt Collectors") are debt collectors as defined by 15 U.S.C. § 1692a(6).

27.  The Third Party Debt Collectors violated 15 U.S.C. § 1692c(b) by communicating with a third party without the Plaintiff's consent.  The Third Party Debt Collectors did this in their conversation with Ms. London's aunt, mother, and grandmother.  The Third Party Debt Collectors also violated section 1692(b) by contacting Ms. London's family members more than once without reason and knowing Ms. London's correct location information.

28. The Third Party Debt Collectors made false representations of the character, amount, and legal status of the debt in violation of 15 U.S.C. §

1692e(2)(A). Specifically, the Third Party Debt Collectors represented that the failure to pay was a crime and that if Ms. London did not pay immediately, a request for a warrant for her arrest would be issued.

29. The Third Party Debt Collectors made false representations of services rendered or compensation which may be lawfully received by it for the collection of a debt in violation of 15 U.S.C. § 1692e(2)(B). Specifically, the Third Party Debt Collectors falsely represented that they were a licensed "investigations firm", were not a debt collector, and were not subject to the consumer debt collection laws. The Third Party Debt Collectors also threatened to file criminal charges against Ms. London and threatened to request issuance of an arrest warrant with the Harris County District Attorney's office for failure to pay the alleged bond fee.

30. The Third Party Debt Collectors represented that nonpayment of the debt would result in the arrest or imprisonment of the Plaintiff in violation of 15 U.S.C. § 1692e(4).

31. The Third Party Debt Collectors threatened action against the Plaintiff that could not legally be taken and was not intended to be taken in violation of 15 U.S.C. § 1692e(5). In particular, the Third Party Debt Collectors threatened to file criminal charges against Ms. London and request issuance of an arrest warrant with

the District Attorney's Office.   Those threats were false, not intended, and impossible.

32. The Third Part Debt Collectors falsely represented that the Plaintiff committed a crime in order to disgrace the Plaintiff in violation of 15 U.S.C. § 1692e(7).

33. The Third Party Debt Collectors used false representations or deceptive means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692e(10) by its conduct described herein.

34. The Third Party Debt Collectors failed to disclose in their initial communication with Ms. London that they were debt collectors attempting to collect a debt and that any information obtained would be used for that purpose, in violation of 15 U.S.C. § 1692e(11).

35. The Third Party Debt Collectors violated 15 U.S.C. § 1692g(a) by failing to send the Plaintiff the required written validation notice within five days after the initial communication with the Plaintiff.

36. The Third Party Debt Collectors' conduct described above was the direct cause of actual damages to the Plaintiff, for which she now sues.   In particular, the Plaintiff seeks lost wages and damage to her business, personal, and credit reputation, as well as damages in the form of mental anguish and

embarrassment, as more particularly described above.

37.  As a result of the Third Party Debt Collectors' violations, the Plaintiff is entitled to an award of statutory damages pursuant to 15 U.S.C. § 1692k(a), for which she now sues.

38.  The Plaintiff would further show this Court that recovery of the costs of this action, including reasonable attorney's fees, are authorized, made, and provided for under and according to the provisions of 15 U.S.C. § 1692k(a)(3), and the Plaintiff seeks them in this action.

## C. Texas Finance Code Claims

39.  Additionally or alternatively the Defendants' conduct constitutes violations of the Texas Collection Practices Act, codified in the Texas Finance Code.  The Plaintiff is a consumer as that term is defined by Tex. Fin. Code, § 392.001(1).  The Defendants are debt collectors as that term is defined by Tex. Fin. Code, § 392.001(6).

40. The Third Party Debt Collectors violated Tex. Fin. Code, § 392.101 by engaging in debt collection in the State of Texas without obtaining a surety bond in the amount of $10,000.00 issued by a surety company authorized to do business in the State of Texas in favor of anyone who is damaged by a violation of Chapter 392 of the Texas Finance Code and in favor of the State of Texas for the benefit of

anyone who is damaged by a violation of Chapter 392 of the Texas Finance Code,
and failing to file such bond with the Secretary of State for the State of Texas.

41. The Plaintiff seeks not less than $100.00 for each violation of Chapter
392 of the Texas Finance Code, pursuant to Tex. Fin. Code, § 392.403(e).

42. The Defendants' actions and conduct constitute violations of Chapter
392 of the Texas Finance Code, as follows:

(a) Accusing falsely or threatening to accuse falsely a person of a crime
in violation of Tex. Fin. Code, § 392.301(2).

(b) Threatening that the Plaintiff will be arrested for nonpayment of a
consumer debt without proper court proceedings in violation of Tex.
Fin. Code, § 392.301(5).

(c) Threatening to take an action prohibited by law in violation of Tex.
Fin. Code, § 392.301(a)(8).

(d) Misrepresenting the character, extent, or amount of the Plaintiff's
consumer debt, or misrepresenting the Plaintiff's consumer debt's
status in a judicial or governmental proceeding in violation of Tex.
Fin. Code, § 392.304(a)(8).

(e) Representing that the debt will definitely be increased by the addition
of attorney's fees, investigation fees, service fees, or other charges
where the award of the fees or charges is subject to judicial discretion
in violation of Tex. Fin. Code, § 392.304(a)(12).

(f) Representing falsely the status or nature of the services rendered by
the debt collector or the debt collector's business in violation of Tex.
Fin. Code, § 392.304(a)(14).

(g) Using any false representation or deceptive act in connection with the
collection of a debt in violation of Tex. Fin. Code, § 392.304(a)(19).

43. As a direct and proximate result of the acts of the Defendants, the Plaintiff has suffered actual damages, which she now seeks. The damages are more particularly described above.

44. Set 'Em Free and Davis also violated Tex. Fin. Code, § 392.306 by using the Third Party Debt Collectors, independent debt collectors, with actual knowledge that they repeatedly or continuously engaged in acts or practices that are prohibited by the Texas Collection Practices Act.

45. The Plaintiff seeks injunctive relief pursuant to Tex. Fin. Code, § 392.403(a)(1) against the Defendants to prevent or retrain them from continuing to communicate with her regarding he alleged debt.

46. The Plaintiff has been forced to hire the attorneys whose names appear below to pursue those claims on her behalf. The Plaintiff seeks an award of her costs of this action, including but not limited to reasonable attorneys' fees pursuant to Tex. Fin. Code, § 392.403(b).

## D. Violations of the Texas DTPA

47. Additionally or alternatively, the Defendants' conduct constitutes violations of the Texas DTPA. Under Tex. Fin. Code, § 392.404(a), a violation of Chapter 392 of the Texas Finance Code is a deceptive trade practice under Subchapter E, Chapter 17, Texas Business & Commerce Code, and is actionable

under that subchapter.  The Defendants committed violations of Chapter 392 of the Texas Finance Code, and thus committed violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm. Code, § 17.50.

48. The Defendants' conduct was the direct cause of damages to the Plaintiff, for which she now sues.  The damages are more particularly described above.

49. The Defendants' conduct was committed knowingly and intentionally, and the court should award additional damages pursuant to Tex. Bus. & Comm. Code, § 17.50(b)(1) and (h).

50.  The Plaintiff has been forced to hire the attorneys whose names appear below to pursue those claims on her behalf.  The Plaintiff seeks an award of her costs of this action, including but not limited to court costs and reasonable and necessary attorneys' fees pursuant to Tex. Bus. & Comm. Code, § 17.50(d).

## E. Negligent Hiring/Supervision

51.  Additionally or alternatively, the actions of Set 'Em Free and Davis, by and through their representatives, constituted negligent hiring and negligent supervision of their collectors the Third Party Debt Collectors.  Set 'Em Free and Davis had a duty to use and exercise reasonable care in hiring and supervising the debt collectors they hired to collect debt on their behalf.  Set 'Em Free and Davis

16

failed to exercise that care.   Set 'Em Free's and Davis' breach of that duty proximately caused damages to the Plaintiff and the Plaintiff has suffered damages as a result of that breach.

52.  As a direct and proximate result of the acts of Set 'Em Free and Davis, the Plaintiff has been damaged in a sum in excess of the minimum jurisdictional limits of the court.

53.  Additionally or alternatively, the actions of the Third Party Debt Collectors, by and through their representatives, constituted negligent hiring and negligent supervision of their collectors.  The Third Party Debt Collectors had a duty to use and exercise reasonable care in hiring, training, and overseeing its collection staff and in attempting to collect the debt.   The Third Party Debt Collectors failed to exercise that care.  The Third Party Debt Collectors' breach of that duty proximately caused damages to the Plaintiff and the Plaintiff has suffered damages as a result of that breach.

54.  As a direct and proximate result of the acts of Defendants, the Plaintiff has been damaged in a sum in excess of the minimum jurisdictional limits of the court.  The Defendants' negligence was of such character as to make them guilty of gross negligence.  The Defendants' actions involved such entire want of care as could only have resulted from actual conscious indifference to the rights, safety or

17

welfare of the Plaintiff, and the Plaintiff hereby sues for exemplary damages in an amount far in excess of the minimal jurisdictional limits of this Court.

### F. Intentional Infliction of Emotional Distress

55. Additionally or alternatively, the Defendants' conduct constitutes intentional infliction of emotional distress. The Defendants intentionally created a false appearance to the Plaintiff that she was criminally responsible for failure to pay bond fees and that they had the power to cause her arrest and incarceration. Their actions in doing this were intentional or reckless, its conduct was extreme and outrageous, its actions caused the Plaintiff emotional distress and the Plaintiff's resulting emotional distress was severe.

56. As a direct and proximate result of the acts of the Defendants, the Plaintiff has been damaged in a sum in excess of the minimum jurisdictional limits of the court. Moreover, the Defendants' actions were intentional or reckless, and the Plaintiff hereby sues for exemplary damages in an amount far in excess of the minimal jurisdictional limits of this Court.

### G. Invasion of Privacy by Intrusion

57. Additionally or alternatively, the Defendants' conduct constitutes invasion of the Plaintiff's privacy by intrusion, in that the Defendants intentionally

intruded upon the solitude of the Plaintiff or his private affairs in a way that was or would have been highly offensive to a reasonable person. The Defendants' intrusion was unreasonable, unjustified, or unwarranted. See *Household Credit Services, Inc. v. Driscol*, 989 S.W.2d 72 (Tex. App. – El Paso 1998, no pet.)

58. As a direct and proximate result of the acts of the Defendants, the Plaintiff has been damaged in a sum in excess of the minimum jurisdictional limits of the court. Moreover, the Defendants' actions were intentional or reckless, and the Plaintiff hereby sues for exemplary damages in an amount far in excess of the minimal jurisdictional limits of this Court.

## H. Injunctive Relief

59. Additionally or alternatively, the Plaintiff is entitled to injunctive relief against the Defendants under Tex. Fin. Code, § 392.403(a)(1) and the Federal Rules of Civil Procedure. As the affidavit of Chanta London, attached hereto as Exhibit A, shows, immediate and irreparable injury, loss, or damage will result to Ms. London before the adverse party can be heard in opposition if the Defendants are not enjoined from further illegal calls to the Plaintiff, her workplace, and her family members on the alleged debt. To the extent that this Court believes that notice should be required, the Plaintiff has faxed a copy of this complaint to the Defendants. The Defendants calls have continued

uninterrupted since September 19, 2012, which makes the injury, loss or damage an immediate threat. It is irreparable in that the calls could cause irreparable damage to her business and personal reputation. This Court should enter a temporary restraining order pursuant to Fed. R. Civ. P. 65(b) enjoining the Defendants from further collection communications with the Plaintiff.

60. The Plaintiff also requests issuance of a preliminary injunction. Equity requires a preliminary injunction applicant to plead and prove not only (1) a cause of action and (2) a probable right to the relief sought, but also (3) a probable, imminent, and irreparable injury in the interim. To establish an irreparable injury, the applicant must show that it cannot be adequately compensated in damages or the damages cannot be measured by any certain pecuniary standard. That is, the applicant has to establish that there is no adequate remedy at law for damages. An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. The purpose of a preliminary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. The Plaintiff seeks a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure after notice and a hearing. The Plaintiff can show a probable right to relief on her claims against the Defendants. As a result of the Defendants' actions, the Plaintiff is and will suffer irreparable

injury, and the Plaintiff has no adequate remedy at law for that injury. Such a preliminary injunction will maintain the status quo pending final litigation of this controversy.

61.    After a trial on the merits, the Plaintiff seeks a permanent injunction for specific performance ordering the Defendants to cease all of their unlawful collection communications.

62.    Under Tex. Fin. Code, § 392.403(a)(1) "a person may sue for injunctive relief to prevent or restrain a violation of this Chapter." Ms. London is entitled to injunctive relief to restrain the Defendants from calling her and making their unlawful threats and disclosures of false information to third parties.

## V.

## Jury Demand

63. The Plaintiff requests a trial by jury on all issues.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, CHANTA LONDON, prays that Defendants, ROSHELL GUMS, a/k/a ROSCHELL D. WARD, a/k/a ROSCHELL REAVELY, d/b/a TDA INVESTIGATIONS, d/b/a THOMAS, DIXON, ASSOCIATE INVESTIGATIONS, d/b/a THOMAS, DIXON & ASSOCIATES; ANTONIO THOMAS; FRANK GIBBS, JR.; FREDERIC

THOMAS; ANTHONY KENNEDY; SHARON DAVIS, d/b/a SET 'EM FREE

BAIL BONDS; and SET 'EM FREE BAIL BONDS, INC., be cited to appear and

answer, and that upon final trial of this matter, that judgment be entered against the

Defendants as follows:

1.    A temporary and permanent injunction against the Defendants'
      continuing violations of the Texas Collection Practices Act;

2.    Actual damages against the Defendants, jointly and severally;

3.    Additional and exemplary damages against the Defendants, jointly
      and severally;

4.    Statutory damages against the Defendants, jointly and severally, under
      15 U.S.C. § 1692k not to exceed $1,000.00;

5.    Costs of the action, including but not limited to reasonable attorney's
      fees and expenses against the Defendants, jointly and severally,
      pursuant to 15 U.S.C. § 1692k and Tex. Fin. Code, § 392.403(b), and
      Tex. Bus. & Comm. Code, § 17.50(d);

6.    Prejudgment and postjudgment interest at the maximum rate allowed
      by law against the Defendants, jointly and severally;

7.    Costs of court against the Defendants, jointly and severally; and

8.    Such other and further relief that may be just and proper.

Respectfully submitted,

**WAUSON ♦ PROBUS**

By:\_\_\_\_/s/ Matthew B. Probus\_\_\_\_
      **Matthew B. Probus**
      TBA# 16341200

One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478
(281) 242-0303 telephone
(281) 242-0306 facsimile

*ATTORNEYS FOR PLAINTIFF,*
*CHANTA LONDON*