UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CHANTA LONDON,                        §
                                      §
          *Plaintiff*,                §
                                      §
v.                                    §          CIVIL ACTION H-12-3011
                                      §
ROSHELL GUMS, *et al.*,               §
                                      §
          *Defendant*.                §

FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Chanta London seeks monetary relief from all the defendants for alleged violations

of the Fair Debt Collection Practices Act, the Texas Finance Code, and the Texas Deceptive Trade

Practices Act, and common law claims of negligent hiring or supervision, intentional infliction of

emotional distress, and invasion of privacy by intrusion.  She also seeks a permanent injunction.  On

December 3, 2013, the court conducted a non-jury trial in this matter.  Dkt. 52.  The court had

already entered default judgments as to liability against all the defendants except for Davis d/b/a Set

'Em Free Bail Bonds, so the purpose of the trial was to determine if Davis d/b/a Set 'Em Free Bail

Bonds was liable for the claims asserted against her and to determine damages as to all defendants.

The court has considered the evidence and arguments of counsel and defendant presented at trial and

the applicable law, and the court now enters the following findings of fact and conclusions of law.[1]

I. FINDINGS OF FACT

From a preponderance of the evidence, the court finds as follows[2]:

---

[1]  Any finding of fact that should be construed as a conclusion of law is adopted as such,
and any conclusion of law that should be construed as a finding of fact is adopted as such.

[2]  The findings of fact with regard to the defaulting defendants are derived from the well-
pleaded allegations in the complaint unless there was testimony at trial that was on-point.

1.     London's husband was arrested in the fall of 2011, and bail was set at $20,000.  London could not afford to pay the bail.  London's husband's attorney referred London to Set 'Em Free Bail Bonds.

2.     Set 'Em Free Bail Bonds is a bail bonds company owned by Sharon Davis.  Davis filed an assumed name with the county showing that she was doing business as Set 'Em Free Bail Bonds ("Set 'Em Free"). [3] Set 'Em Free is a company that provides bonds to people who have been arrested so that they can get out of jail.  Set 'Em Free charges a fee for providing bonds.

3.     Two $10,000 bonds were needed to secure London's husband's release from jail.  Set 'Em Free's fee for its bond services is 10% of the bond amount, which was $2,000 in this case.  Set 'Em Free normally requires its clients to pay at least half of the fee, and it will arrange a payment plan for the remaining balance.  However, Set 'Em Free allowed London to pay only $700 as a down payment because she was referred to Set 'Em Free by an attorney, with the remaining balance to be paid on a weekly or bi-weekly basis.  London acted as a guarantor for payment of the bond costs.

4.     The agreement London signed required her husband to check into Set 'Em Free once a week or "make contact with the office if necessary."  Def.'s Ex. C.  He was required to check in on either Wednesday or Thursday.  Def.'s Ex. E.

5.     Set 'Em Free issued two $10,000 bonds, and London's husband was released.  *See* Def.'s Ex. F.

6.     London and/or her husband made several payments on the bond.  *See* Def.'s Exs. F–M.

7.     London's husband appeared on his court date and was sentenced to six months in jail.

---

[3] Davis also filed documents to establish a corporation, Set 'Em Free Bail Bonds, Inc. Default as to liability has already been entered against the corporation, as well as the other defendants.

8.     London believed that she or her husband had finished paying off the bond amount at the time of her husband's sentencing, so she did not continue to make payments on the bond.

9.     After London's husband was serving his sentence, London received a phone call while she was at work from Cyntheal Cook, who told London her name was "Cookie."  At the time, Cook worked in collections at Set 'Em Free.  She was the only employee that was officially doing collections.  Cook advised London that London's husband still owed money on the bond.  London advised Cook that she would call her back on her break because she was not allowed to take personal phone calls at work.

10.    London called Cook back from her cell phone and asked for proof of the debt.  Instead of providing proof, Cook advised London that she would call her back at her desk if the bond was not paid and that London could go to jail for failing to pay the bond.[4]

11.    London worked as a collection manager for United Recovery Systems.  Her position was essentially a debt collector, as she "managed" accounts of individuals who owed debts.  Her employer had a policy regarding receiving personal calls at work.  The first time an employee was caught taking a personal call at work, he or she was suspended.  The second time the employee was caught taking a personal call at work, his or her employment was terminated.  Every phone call is recorded, and when an employee receives a call, the employee and the manager both get notifications about the call on their computer monitors.

12.    After her conversation with Cook, London was very worried about what was going to happen because (1) she could get fired for receiving calls at work; and (2) if she were to go to jail, she did

---

[4] Cook denies that she told London that she would go to jail if she did not pay, but the court found London more credible than Cook.

not know how she would be able to support her children or who would take care of them.  Her degree of distress at this point, however, did not rise above worry, anxiety, vexation, embarrassment, or anger.

13.     A different person from Set 'Em Free called London the very next day.  London advised the person that she had spoken with Cook the day before and that she was not able to take calls at work.  Then, she hung up.

14.     London received several other calls from Set 'Em Free after that—on her cell phone and at work.  Usually Cook was the person who called.  Cook intentionally told London that she would go to jail if she did not pay the debt.  Cook knew that she was not supposed to tell individuals that they could go to jail for not paying debts, as Davis had advised Cook that this was not allowed during her training.  London asked for proof that she still owed money, and Cook gave her a copy of a statute that London interpreted as meaning that if she did not pay the bond she could go to jail.

15.     London did not go to the Set 'Em Free offices to ask to see proof of what she owed.

16.     Set 'Em Free contends that London still owed $1100 on her husband's bond.[5]  When it was unsuccessful in getting London to pay this balance, it referred the file to TDA Investigations Company, which is owned by defendant Roshell Gums.  TDA Investigations' task was to locate Mr. London and if it did so, Set 'Em Free would "sell" the debt to TDA Investigations for seventy percent of what was collected or owed.[6]

---

[5]  The court is drawing no conclusions regarding whether London did or did not still owe on the bond.

[6]  The terms of the agreement were never completely clarified during trial.  There is no evidence that TDA Investigations collected any funds from London.

4

17.    At this point, Set 'Em Free discontinued calling London.  However, London soon received a call from her aunt, who had received a call from an "investigator" named Anthony who told London's aunt that London was going to jail if she did not pay her bond.  "Anthony" left his phone number with London's aunt, and London called him back.[7]

18.    When London spoke with "Anthony," he told London that he was an "investigator" and started raising his voice.  He told London that she owed Set 'Em Free money and that if she did not pay it she was going to go to jail.  London asked to speak with somebody else, and began speaking with Anthony Kennedy.  Kennedy also told London that there was a "capias" for her due to the bond.  She asked Kennedy if he was with the "police" and she interpreted his response as indicating that he was with the police.  Kennedy informed London that his company was getting licenses to carry guns.  When London asked how much she owed, he said she had to pay for TDA Investigations to find her in addition to the money she owed Set 'Em Free, and interest, which he stated totaled well over $2,000.  London asked Kennedy not call her at work, and he told London that he did not have to obey anything she told him because he was not governed by any laws.

19.    London's discussions with the "investigators" and TDA Investigations caused her anxiety, as she was concerned about who was going to take care of her kids if she lost her job and went to jail. She felt she would lose her job automatically if she went to jail.  Before the call ended, Kennedy told her that if she is driving and the police are behind her, they were going to pull her over and take

_____

[7] At trial London referred to the first person with whom she spoke at TDA Investigations as "Anthony."  The first person she spoke with at TDA Investigations is identified as "Burley" in London's complaint.  In the transcript of the conversation, the person identifies himself as Burlee.  Pl.'s Ex. 2.

5

her to jail.  London was also very afraid because Kennedy told her they know where she lives and talked about guns.

20.     On the same day that London spoke to the investigators at TDA Investigations, London's 84-year-old grandmother received a call about London's alleged bail bond debt.  London's grandmother called London and told her that the "police" had called and said that London was going to go to jail because London did not pay her bond.

21.     London was very embarrassed because her aunt, mother, and grandmother all believed she had broken the law and was running from the police.

22.     For weeks after this conversation, London was afraid that somebody was going to be at her house with a gun ready to take her to jail.

23.     For weeks after the initial call, TDA Investigations' representatives continued to make multiple, repeated, and continuous calls to London at work and at home, leaving detailed messages disclosing that the call was about a debt and stating that there was an ongoing criminal investigation relating to London's bond forfeiture.

24.     London was under so much stress from these calls that she was unable to perform her normal and ordinary work and home life duties for several hours and sometimes days after the calls.  She was also unable to sleep at night because she kept replaying the collection calls in her mind.

25.     The last time London heard from TDA Investigations, the caller asked London if she was going to pay the $2000 and warned her that if she did not a "capias warrant" would be issued.  He told London that this was her last chance.

26.     All of the collectors and employees of TDA Investigations were under the direct supervision and control of Roshell Gums (TDA Investigations' sole proprietor), Anthony Kennedy (TDA

6

Investigations' Director of Bonding), or Antonio Thomas (TDA Investigations' CEO).  The collectors were at all times acting within the scope of their employment and were subject to Gums' control.  The debt collectors at TDA Investigations acted knowingly and intentionally.

27.     On October 9, 2012, London filed suit in this court against (1) Roshell Gums, a/k/a Roschell D. Ward, a/k/a Roschell Reavely, d/b/a TDA Investigations, d/b/a Thomas, Dixon, Association Investigations, d/b/a Thomas Dixon & Associates; (2) Antonio Thomas; (3) Frank Gibbs, Jr.; (4) Frederic Thomas; (5) Anthony Kennedy; (6) Sharon Davis, d/b/a Set 'Em Free Bail Bonds; and (7) Set 'Em Free Bail Bonds, Inc.  Dkt. 1.  London's original complaint contained an application for a temporary restraining order, preliminary injunction, and permanent injunction.  *Id.*

28.     On October 11, 2012, the court granted the application for a temporary restraining order and set a hearing date for the request for a preliminary injunction.  Dkt. 3.

29.     On October 17, 2012, the court held a hearing regarding London's request for a temporary injunction. Dkt. 13.

30.     London appeared through counsel at the hearing. *Id.*  Defendants Anthony Kennedy, Antonio Thomas, and Sharon Davis all made pro se appearances at the hearing.  *Id.*

31.     After hearing testimony of London and the three appearing defendants, the court granted London's application for a preliminary injunction.  *Id.*  The court entered a preliminary injunction prohibiting all the defendants and their employees, representatives, and agents from contacting by telephone or coming within five hundred feet of London, her family members, or her workplace. Dkt. 18.

32.     London's fear continued even after the court entered the preliminary injunction and through the trial date because of the way Anthony Kennedy treated her during their phone conversation and

the way he acted towards her at the hearing.  London testified that she did not "know if he's going to pop out of a tree now."

33.     London did not present any evidence that she suffered any economic loss as a result of Davis d/b/a Set 'Em Free's or TDA Investigations' actions.

34.     London's attorney's hourly billing rate for matters of this nature and complexity is $350.00 per hour.  Dkt. 59.  The paraprofessionals in his firm bill at an hourly rate of $95.00 per hour.  *Id.* The court finds that these rates are reasonable.

35.     London's attorney billed 70.0 hours working on this case, and the paraprofessionals he employs spent 20.5 hours.  *Id.*  London's attorney also spent 5.5 hours preparing for and attending trial on December 5, 2013.  *Id.*  The court finds that the number of hours billed is reasonable for this case.

36.     When one multiplies the number of hours billed by the rates, the total amount of fees is $28,372.50.

37.     London's attorney's firm covered $1,510.09 in out-of-pocket expenses to prosecute this case on London's behalf.  The court finds that these costs are reasonable.

38.     The court finds that reasonable attorneys' fees for prosecuting an appeal in this case to the Fifth Circuit, should the defendants unsuccessfully appeal, is $25,000.00.  Additionally, if a writ of certiorari or response to a writ of certiorari is necessary and London prevails, a reasonable and necessary fee to respond to the petition is $5,000.00 and a reasonable and necessary fee for briefing is $15,000.00.

8

## II. CONCLUSIONS OF LAW

London asserts that following claims against Davis d/b/a Set 'Em Free Bail Bonds,  Set 'Em Free Bail Bonds, Inc., Gums, Thomas, and Kennedy, either directly as a result of and agency relationship or ratification: violations of the federal Fair Debt Collection Practices Act ("FDCPA"); the Texas Debt Collection Practices Act ("TDCPA"); Texas Deceptive Trade Practices Act ("DTPA"); and negligent hiring/supervision, intentional infliction of emotional distress, and invasion of privacy by intrusion.  London also seeks a permanent injunction against all defendants.

### A.    FDCPA

1.    London claims that the third-party debt collectors violated the FDCPA.  Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692a(6).  TDA Investigations and its employees who contacted London to collect the alleged bail bonds debt via the telephone are debt collectors under the FDCPA. Davis d/b/a Set 'Em Free and Set 'Em Free Bail Bonds, Inc. are not a debt collectors under the FDCPA because Set 'Em Free was not attempting to collect a debt of "another" and did not use a name other than Set 'Em Free when contacting London.

2.    TDA Investigations' debt collectors violated 15 U.S.C. § 1692c(b) by communicating with a third party about London's debt without her consent.  TDA Investigations' debt collectors also violated 15 U.S.C. § 1692e(2)(A), § 1692e(4), and § 1692e(5) by representing that London's failure

9

to pay the bond was a crime and that she would be arrested if she did not pay.  TDA Investigations'

debt collectors also violated 15 U.S.C. § 1692e(2)(B) by representing that TDA Investigations was

an "investigations firm" rather than a debt collector and that it was not subject to debt collection

laws.  TDA Investigations' debt collectors violated 15 U.S.C. § 1692e(7) by telling London's family

members that she had committed a crime in order to disgrace London, and they violated 15 U.S.C.

§ 1692e(10) by making false representations or deceptive means to collect or attempt to collect a

debt.  TDA Investigations' debt collectors violated 15 U.S.C. § 1692e(11) by failing to disclose in

their initial communications with London that they were debt collectors, and they violated 15 U.S.C.

§ 1692g(a) by failing to send London a written validation notice within five days after the initial

communication.  London is entitled to statutory damages of up to $1,000 pursuant to 15 U.S.C.

§ 1692k(a) for these violations, and she is entitled attorneys' fees pursuant to 15 U.S.C.

§ 1692k(a)(3).

3.      London alleges that Davis d/b/a Set 'Em Free gave the third-party debt collectors express and

implied authority to act as her agent and ratified the actions of the third-party debt collectors.

London thus asserts that Davis d/b/a Set 'Em Free can be held liable as a "debt collector" under an

agency/ratification theory.  However, a non-debt collector generally cannot be vicariously liable for

a debt collector's FDCPA violations.  *See, e.g.*, *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103,

108 (6th Cir. 1996) ("We do not think it would accord with the intent of Congress, as manifested in

the terms of the Act, for a company that is not a debt collector to be held vicariously liable for a

collection suit that violates the Act only because the filing attorney is a 'debt collector.'"); *Cangelosi*

*v. New Orleans Hurricane Shutter & Window, L.L.C.*, No. 12-427, 2013 Wl 395138, at *5 (E.D. La.

Jan. 31, 2013) (collecting cases that indicate that a creditor cannot be vicariously liable for its debt

collector's actions); *Boles v. Moss Codilis, LLP*, No. SA-10-CV-1003-XR, 2011 WL 2618791, at

*4 (W.D. Tex. July 1, 2011) ("[S]everal courts have rejected the notion of holding a creditor or other

non-debt collector vicariously liable for the actions of a debt collector."); *Williams v. Countrywide*

*Home Loans, Inc.*, 504 F. Supp. 2d 176, 190–91 (S.D. Tex. 2007) (Rosenthal, J.) (determining that

the plaintiff's FDCPA claims failed because the lender defendants were not debt collectors).  London

cites several cases that she contends support her theory that Davis can be held liable for the actions

of TDA Investigations and its collectors.  Most of the cases she cites, however, involves a *debt*

*collector* being vicariously liable for the actions of an attorney hired to collect its debts.  *See Fox v.*

*Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994) (finding that "Congress intended the

actions of an attorney to be imputed to the client on whose behalf they are taken" in the context of

an attorney who was employed by a *debt collector*); *Martinez v. Albuquerque Collection Servs., Inc.*,

867 F. Supp. 1495, 1502 (D.N.M. 1994) (finding a *debt collector* to be vicariously liable for the

actions of an attorney under its control); *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1486 (M.D.

Ala. 1987) (same).  The other case cited by Davis d/b/a Set 'Em Free, *West v. Costen*,

558 F. Supp. 564, 573 (D.C. Va. 1983), dealt with vicarious liability of a collection agency for the

acts of its collection agents.  None of the cases indicate that a *creditor* can be vicariously liable for

the acts of a debt collection agency it hires.  Davis d/b/a Set 'Em Free and Set 'Em Free Bail Bonds,

Inc. thus are not liable under the FDCPA for the third-party debt collectors' actions.[8]

---

[8] To the extent the holdings in these findings of fact and conclusions of law conflict with
the default judgment entered against Set 'Em Free Bail Bonds Inc. as to liability, the holdings in
these findings of fact and conclusions of law supersede the holdings in the order entering default as
to liability.  Upon further review of the complaint, the court has determined that some of the
causes of action in the complaint that are pled against Set 'Em Free Bail Bonds, Inc. are not well-
pleaded.

**B.      TDCPA**

4.      London alleges that she is a "consumer" and all the defendants are "debt collectors" under

the TDCPA that violated various provisions of that act.  Under the TDCPA, a "consumer" is "an

individual who has a consumer debt."  Tex. Fin. Code Ann. § 392.001(1).  A "consumer debt" is "an

obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising

from a transaction or alleged transaction."  *Id.* § 392.001(2).  The bond is a "consumer debt," and

London, as guarantor of her husband's bond, is a "consumer" under the TDCPA.  *See Monroe v.

Frank*, 936 S.W.2d 654, 660 (Tex. App.—Dallas 1996, writ dism'd w.o.j.) (finding that an

individual who obtained a bond to get a family friend out of jail "derived benefit for himself from

the transaction" and was thus a "consumer" with "consumer debt").

5.      Under the TDCPA, a "debt collector" is "a person who directly or indirectly engages in

collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor."

*Id.* § 392.001(6).  "Debt collection" "means an action, conduct, or practice in collecting, or in

soliciting for collection, consumer debts that are due or alleged to be due a creditor."  *Id.*

§ 392.001(5).  The TDCPA, unlike the FDCPA, "applies to entities attempting to collect their own

debts."  *Monroe*, 936 S.W.2d at 660 (finding that a bail bonds company attempting to collect a bail

bond debt was a "debt collector" under the TDCPA).  Davis d/b/a Set 'Em Free and Set 'Em Free

Bail Bonds, Inc. are therefore a "debt collectors" under the TDCPA.  Gums, Kennedy, and Thomas

are also "debt collectors."

6.      Under section 392.301 of the Texas Finance Code, a "debt collector may not use threats,

coercion, or attempts to coerce that employ . . ."

> (2) accusing falsely or threatening to accuse falsely a person of fraud
> or any other crime;
> . . .

> (5) threatening that the debtor will be arrested for nonpayment of a
> consumer debt without proper court proceedings; [or]
> . . .
> (8) threatening to take an action prohibited by law.

Tex. Fin. Code Ann. § 392.301(a).  Cook's representation to London that she would go to jail if she did not pay the remainder of the debt was a violation of section 392.301.  The representations made by TDA Investigations' debt collectors are also a violation os section 392.301.

7.      Under section 392.304 of the Texas Finance Code, a "debt collector" who is attempting to obtain information concerning a consumer debt "may not use a fraudulent, deceptive, or misleading representation that employs the following practices":

> (8) misrepresenting the character, extent, or amount of a consumer
> debt, or misrepresenting the consumer debt's status in a judicial or
> governmental proceeding;
> . . .
> (12) representing that a consumer debt may be increased by the
> addition of attorney's fees, investigation fees, service fees, or other
> charges if a written contract or statute does not authorize the
> additional fees or charges;
> . . .
> (14) representing falsely the status or nature of the services rendered
> by the debt collector or the debt collector's business; [or]
> . . .
> (19) using any other false representation or deceptive means to collect
> a debt or obtain information concerning a consumer.

Tex. Fin Code § 392.304(a).  While London testified that she asked how much she was owed and believed she had already paid off her debt, she did not provide any additional evidence that she had paid off the debt and did not provide any evidence that Davis d/b/a Set 'Em Free misrepresented the amount of the remaining debt.  However, Cook's representation and the representations of the debt collectors at TDA Investigations that London would go to jail if London did not pay the debt constitutes a deceptive means to collect the debt and thus is a violation of section 392.304(19).

8.      Under section 392.403, the damages available for violations of the subsections of the Texas Finance Code that London alleges the defendants violated are injunctive relief and actual damages. Reasonable attorneys' fees and costs may also be recovered if a person "successfully maintains an action" under the TDCPA.  Tex. Fin. Code § 392.403(b).  A party that successfully maintains an action for actual damages *or* for an injunction is entitled to attorneys' fees.  *Marauder Corp. v. Beall*, 301 S.W.3d 817, 823 (Tex. App.—Dallas 2009, no pet.).

9.      "Actual damages" include not only economic damages and mental anguish damages.  In order to recover mental anguish damages under the TDCPA, the plaintiff must show "'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.'"  *Gonzalez v. Temple-Inland Mortg. Corp.*, 289 S.W.3d 622, 626 (Tex. App.—San Antonio 2000, no pet. (quoting *Parkway Co. v. Woodruff*, 90 S.W.2d 434, 444 (Tex. 1995)).  London is not entitled to actual damages against Davis d/b/a Set 'Em Free because she did not show that she had economic loss due to Davis d/b/a Set 'Em Free's, Set 'Em Free Bail Bonds, Inc.'s, or Set 'Em Free's employees' debt collection efforts and because her mental anguish did not rise above mere worry, anxiety, vexation, embarrassment, or anger with regard to the calls she received from Set 'Em Free. London is entitled to actual damages against Gums, Kennedy, and Thomas because she had a high degree of mental pain and distress after receiving the calls from TDA Investigations.

10.     Even though London did not meet her burden of proof with regard to actual damages against Davis d/b/a Set 'Em Free, London is entitled to a permanent injunction restraining Davis d/b/a Set 'Em Free, Set 'Em Free Bail Bonds, Inc., and Set 'Em Free's employees from calling London to collect the debt due the TDCPA violations.[9]  London is also entitled to a permanent injunction

---

[9]  This does not prevent Davis d/b/a Set 'Em Free from attempting to collect the debt via the judicial system.

prohibiting TDA Investigations and its employees or agents from calling London to collect the debt.

11.     Under section 392.403(e), a "person who successfully maintains an action . . . for violation of Section 392.101, 392.202, or 392.301(a)(3) is entitled to not less than $100 for each violation . . . ."  Obtaining an injunction qualifies as successfully maintaining an action for the purpose of section 392.403(e) relief even if no actual damages are awarded.  *See Marauder Corp.*, 301 S.W.3d at 822.  Since London is entitled to a permanent injunction, London is entitled to an award of $100 for Davis d/b/a Set 'Em Free's and Set 'Em Free Bail Bonds, Inc.'s violation of the TDCPA.  London is likewise entitled to an award of at least $100 against Gums, Thomas, and Kennedy under the TDCPA.

**C.     Agency and Ratification Theories**

12.     London claims that Davis d/b/a Set 'Em Free and Set 'Em Free Bail Bonds, Inc. are liable for their agents' violations of the TDCPA.  Under Texas law, "an employer is liable for its employee's conduct so long as the act is done while the employee is acting within his [or her] general authority and for the benefit of the employer."  *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 578 (Tex. 2002).  Here, Cook was employed by Set 'Em Free and was acting with Davis's general authority and for the benefit of Set 'Em Free.  Thus Davis d/b/a Set 'Em Free and Set 'Em Free Bail Bonds, Inc. are vicariously liable for Cook's violations of the TDCPA.

13.     London asserts that Davis d/b/a Set 'Em Free and Set 'Em Free Bail Bonds, Inc. are also liable for TDA Investigations' violations of the TDCPA because TDA Investigations was Set 'Em Free's agent or Set 'Em Free ratified TDA Investigations' conduct.  Under Texas law, "agency is a legal relationship created by an express or implied agreement or by operation of law whereby the agent is authorized to act for the principal, subject to the principal's control."  *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1296 (5th Cir. 1994).   An agency relationship must be shown

affirmatively, and the party asserting the existence of an agency relationship bears the burden of proving it. *Id.* "To prove an agency relation under Texas law, there must be evidence from which the court could conclude that '[t]he alleged principal [had] the right to control both the means and the details of the process by which the alleged agent [was] to accomplish the task.'" *Id.* (quoting *In re Carolin Paxson Adver., Inc.*, 938 F.2d 595, 598 (5th Cir. 1991). There is no evidence that Davis d/b/a Set 'Em Free controlled or even knew about TDA Investigations' conduct. There are also no allegations in London's complaint that Set 'Em Free Bail Bonds, Inc. had the right to control the means and details of TDA Investigations' work. Thus, London has not sufficiently demonstrated that Davis d/b/a Set 'Em Free or Set 'Em Free Bail Bonds, Inc. can be vicariously liable for TDA Investigations' or its employees' violations of the TDCPA.

14.     Gums is liable for the conduct of Thomas, Kennedy, and the other debt collector or collectors with whom London spoke, as these debt collectors were within the course and scope of their employment with TDA Investigations.

15.     London contends that even if Davis d/b/a Set 'Em Free and Set 'Em Free Bail Bonds, Inc. did not have knowledge of TDA Investigations' conduct when Set 'Em Free referred London's file to TDA Investigations, Davis d/b/a Set 'Em Free and Set 'Em Free Bail Bonds, Inc. later ratified TDA Investigations' conduct.

> Ratification may occur when a principal, though he [or she] had no knowledge originally of the unauthorized act of his agent, retains the benefits of the transaction after acquiring full knowledge. . . . The critical factor in determining whether a principal has ratified an unauthorized act by his agent is the principal's knowledge of the transaction and his actions in light of such knowledge.

*Land Title Co. of Dall., Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980). Here, there is no evidence that Davis d/b/a Set 'Em Free retained any benefits of TDA Investigations' actions, as

16

there is no evidence that TDA Investigations recovered any funds from London and provided a portion of the funds to Davis d/b/a Set 'Em Free.  There are also no allegations in the complaint that Set 'Em Free Bail Bonds, Inc. retained benefits of TDA Investigations' conduct.  Thus, Davis d/b/a Set 'Em Free and Set 'Em Free Bail Bonds, Inc. did not ratify TDA Investigations' conduct.

16.     London also asserts a statutory claim that is similar to her agency and ratification theories. London asserts that Davis d/b/a Set 'Em Free and Set 'Em Free Bail Bonds, Inc. violated Texas Finance Code section 392.306 by hiring TDA Investigations to collect London's debt.  Under section 392.306, a "creditor may not use an independent debt collector if the creditor has actual knowledge that the independent debt collector repeatedly or continuously engages in acts or practices that are prohibited by this chapter."  Tex. Fin. Code Ann. § 302.306.  There is no evidence that Davis d/b/a Set 'Em Free had actual knowledge that TDA Investigations repeatedly or continuously engaged in acts or practices prohibited by the Texas Finance Code.  Davis d/b/a Set 'Em Free therefore did not violate this section.  However, London alleges in her complaint that "Set 'Em Free and Davis also violated Tex. Fin. Code § 392.306 by using the Third Party Debt Collectors, independent debt collectors, with actual knowledge that they repeatedly or continuously engaged in acts or practices that are prohibited by the Texas Collection Practices Act."  Dkt. 1.  Since Set 'Em Free Bail Bonds, Inc. defaulted, and these allegations are sufficient to meet the standard for a violation of section 392.306, Set 'Em Free Bail Bonds, Inc. is liable for a violation of section 392.306.

**D.     Texas DTPA**

17.     London asserts that the defendants violated the Texas DTPA by violating the TDCPA.  Under section 392.404 of the Texas Finance Code, a violation of the TDCPA "is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code [the Texas DTPA], and is actionable under that chapter."  Tex. Fin. Code Ann. § 392.404(a).

17

18.     In order to recover under the Texas DTPA, the plaintiff must establish that she is a "consumer" under the Texas DTPA.  *See Cushman v. GC Servs., LP*, 657 F. Supp. 2d 834, 845 (S.D. Tex. 2009) (citing Texas law).  A "consumer" under the Texas DTPA "means an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more."  Tex. Bus. & Com. Code Ann. § 17.45(4).  London is a "consumer" under the Texas DTPA because she sought to purchase bail bonds services.  Because London is a consumer under the Texas DTPA and the defendants violated the TDCPA, the defendants also violated the Texas DTPA.

19.     Under section 17.50(b)(1) of the Texas DTPA, a consumer who prevails on a Texas DTPA claim may recover economic damages found by the trier of fact, and if the trier of fact determines that defendant acted knowingly, the consumer may also recover damages for mental anguish, up to three times the amount of economic damages.  Tex. Bus. & Com. Code Ann. § 17.50(b)(1).  "Economic damages" are "compensatory damages for pecuniary loss, including costs of repair and replacement."  *Id.* § 17.45(11).  Under the Texas DTPA, "economic loss is determined by the total loss sustained by the consumer as a result of the deceptive trade practice."  *Ford Motor Co. v. Cooper*, 125 S.W.3d 794, 803 (Tex. App.—Texarkana 2004, no pet.).  "[T]he burden is on the plaintiff to establish his or her damages with reasonable certainty to enable a jury [or judge] to compute them."  *Id.* at 804.  London did not show any economic loss for the defendants' violation of the Texas DTPA.  Thus, she is not entitled to economic damages.

20.     Under the Texas DTPA, if the trier of fact finds the defendant's conduct was intentional, the consumer may recover damages for mental anguish and the trier of fact may award additional

18

damages of not more than three times the amount of damage for mental anguish and economic damages. Tex. Bus. & Com. Code Ann. § 17.50(b)(1). Under section 17.50(h), if the claimant is granted the right to bring the DTPA claim by another law, which is the case here, then she is not limited to economic damages and may recover actual damages without regard to whether the action is intentional. *Id.* § 17.50(h). Under section 17.50(h), when awarding the damages listed in section 17.50(b)(1), the trier of fact is authorized to award a total of not more than three times actual damages, in accordance with subsection 17.50(b)(1). *Id.*

21.     If there is no evidence of actual damages under the Texas DTPA, additional damages cannot be awarded. *Id.* § 17.50(b)(1); *Ford Motor Co.*, 125 S.W.3d at 804 (citing *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 903 (Tex. 1985) (noting that Texas cases require actual damages before awarding exemplary damage)). Mental anguish is a form of "actual damages." *See Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex. 2002) (noting that the plaintiff "was entitled to recover actual damages for injury to his reputation and for mental anguish" as a matter of law); *Latham v. Castillo*, 927 S.W.2d 66, 69 (Tex. 1998) ("It is axiomatic that mental anguish damages *are* actual damages recoverable at common law . . . 'and by analogy for knowing violations of certain statutes such as the Deceptive Trade Practices Act.'" (quoting *City of Tyler v. Likes*, 962 S.W.2d 489, 495 (Tex. 1997)).

22.     Under Texas law, a plaintiff may establish that she suffered mental anguish by introducing "direct evidence of the nature, duration, and severity of [her] mental anguish, thus establishing a substantial disruption in the plaintiff['s] daily routine." *Parkway Co.*, 901 S.W.2d at 444. If the plaintiffs cannot present direct evidence, courts must determine "whether the record reveals any evidence of 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger' to support any award of damages." *Id.* (quoting *J.B. Custom*

*Design & Bldg. v. Clawson*, 794 S.W.2d 38, 43 (Tex. App.—Houston [1st Dist.] 1990, no writ));

*Jabri v. Alsayyed*, 145 S.W.3d 660, 669 (Tex. App.—Houston [14th Dist.] 2004) (using this standard

with regard to a DTPA claim).  The amount of damages for mental anguish "cannot be determined

with mathematical precision," but the plaintiff must present evidence to justify the amount of

damages awarded.  *Bentley*, 94 S.W.3d at 605.  The degree of mental distress as evidenced by

London's testimony that followed her phone calls from Set 'Em Free did not rise above mere worry,

anxiety, vexation, embarrassment, or anger.  Thus, like with the TDCPA, London is not entitled to

mental anguish damages or additional damages against Davis d/b/a Set 'Em Free or Set 'Em Free

Bail Bonds, Inc. under the Texas DTPA.  However, the degree of mental anguish London

experienced after receiving calls from TDA Investigations does support an award of damages for

mental anguish.  The court finds that London presented sufficient evidence to justify an award of

$2,000.00 for mental distress, which is the amount of money that TDA Investigations attempted to

collect from London.  The court also finds that London is entitled to exemplary damages totaling

$6,000.00.

**E.     Negligent Hiring or Supervision**

21.     London contends, in the alternative, that Davis d/b/a Set 'Em Free and Set 'Em Free Bail

Bonds, Inc. negligently hired and supervised its representatives and third-party debt collectors and

that TDA Investigations negligently hired or supervised its debt collectors.  Under Texas law, an

"employer has a duty to adequately hire, train, and supervise employees.  The negligent performance

of those duties may impose liability on an employer if the complainant's injuries result from the

employer's failure to take reasonable precautions to protect the complainant from the misconduct

of its employees."  *Castillo v. Gared, Inc.*, 1 S.W.3d 781, 786 (Tex. App.—Houston [1st Dist.]

1999).  "An employer's liability for negligent hiring, supervision, or retention arises if it hires an

incompetent or unfit employee whom the employer knows, or reasonably should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." *Cox v. City of Ft. Worth, Tex.*, 762 F. Supp. 2d 926, 940 (N.D. Tex. 2010) (collecting cases). "A person employing an independent contractor," like a person employing an employee, "is required to use ordinary care in hiring the contractor." *Mireles v. Ashley*, 201 S.W.3d 779, 782 (Tex. App.—Amarillo 2006, no pet.); *see also Martinez*, 355 S.W.3d at 180 (citing *Mireles*, *infra*, for this principle). "The duty of the employer extends only to prevent the employee or independent contractor from causing physical harm to a third party." *Martinez v. Hays Const., Inc.*, 355 S.W.3d 170, 180 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

23.    No evidence was presented at trial that Davis d/b/a Set 'Em Free was negligent in hiring or training Cook, and London did not offer any evidence regarding the extent of supervision Davis exercised over Cook. There is also no allegation in the complaint that Set 'Em Free Bail Bonds, Inc. knew or should have known that Cook was incompetent or unfit. *See* Dkt. 1.

24.    With regard to Davis d/b/a Set 'Em Free's/Set 'Em Free Bail Bonds, Inc.'s hiring of TDA Investigations, no evidence was presented that Davis knew or should have known that TDA Investigations was incompetent or unfit. Thus, Davis d/b/a Set 'Em Free is not liable for negligent hiring of its employees or TDA Investigations.

25.    With regard to Set 'Em Free Bail Bonds, Inc., there is an allegation in the complaint that Davis d/b/a Set 'Em Free and Set 'Em Free Bail Bonds, Inc. "had actual knowledge that [TDA Investigations] repeatedly or continuously engaged in acts or practices that are prohibited by the Texas Collection Practices Act." Dkt. 1. However, there are no allegations relating to physical

harm, so the negligent hiring claim necessarily fails.  The claims against Gums, Thomas, and Kennedy fail for the same reason.[10]

## F.    Intentional Infliction of Emotional Distress

26.    London also asserts a claim for intentional infliction of emotional distress.  The elements of intentional infliction of emotional distress are (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe.  *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993).  "Outrageous conduct" is conduct that "'has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Id.* (quoting the Restatement).   "Severe" emotional distress is "more than mere worry, anxiety, vexation, embarrassment, or anger."  *Fulmer v. Fulmer*, 2009 WL 2716799, at *4 (Tex. App.—Fort Worth, July 10, 2008).  Indeed, emotional distress is only severe if "no reasonable person could be expected to endure it."  *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999).

27.    Again, the degree of mental distress as evidenced by London's testimony that followed her phone calls from Set 'Em Free did not rise above mere worry, anxiety, vexation, embarrassment, or anger.  Accordingly, London has not met all of the elements of a claim against Davis d/b/a Set 'Em Free for intentional infliction of emotional distress.

28.    With regard to Set 'Em Free Bail Bonds, Inc., London pleads generally that "defendants'" conduct caused her severe emotional distress.  Dkt. 1.  However, the factual allegations relating to

---

[10]   Like with Set 'Em Free Bail Bonds, Inc., to the extent the holdings in these findings of fact and conclusions of law conflict with the default judgments as to liability the court entered against the other defendants, the holdings in these findings of fact and conclusions of law supersede the entries of default.

Set 'Em Free Bail Bonds, Inc. do not indicate that the actions of the employees of Set 'Em Free Bail Bonds, Inc. were so outrageous as to go beyond all bounds of decency such that it would cause emotional distress so severe no reasonable person could be expected to endure it.  Nor was there any evidence presented at trial of mental distress sufficient to support damages for intentional infliction of emotional distress prior to the calls from TDA Investigations.

29.     However, TDA Investigations' conduct in advising London that she needed to watch out because if the police were following her they would likely be about to take her to jail and in insinuating that the "investigators" knew where she lived and would soon be licensed to carry guns was outrageous and intolerable, and her emotional distress following these calls was severe.  Thus, London has met her burden for the intentional infliction of emotional distress claim with regards to Gums, Kennedy, and Thomas.

**G.     Invasion of Privacy by Intrusion**

30.  London's final cause of action is invasion of privacy by intrusion.  Under Texas law, "an unwarranted invasion of the right of privacy constitutes a legal injury for which a remedy will be granted." *Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex. 1973).  The tort has two elements: "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person." *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993).   The intrusion must also "be unreasonable, unjustified, or unwarranted." *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 253 (Tex. App.—Houston [1st Dist.] 1993, writ denied).   "The core of this claim is the offense of prying into the private domain of another . . . ." *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 455 (Tex. App.—Dallas 2002, no pet.).  In *Household Credit Services, Inc. v. Discol*, 989 S.W.2d 72, 84-85 (Tex. App.—El Paso 1998, pet. denied), the El Paso Court of Appeals considered an appeal of a jury

23

finding that a deb collector invaded the privacy of Marianne Driscol.  The evidence at trial suggested

that the debt collector called Driscol at work and at home several times a day, as well as early in the

morning and late at night.  Driscol asked the debt collector to stop making multiple calls in one day

and stop calling early in the morning and late in the evening, but the calls did not stop.  *Household*

*Credit Servs.*, 989 S.W.2d at 85.  Additionally, the debt collectors allegedly used foul language.  *Id.*

at 79.  There was evidence that in one single two-hour time period the debt collector placed 26 calls

to Driscol's place of employment.  *Id.*  The calls were so disruptive that the president of Driscol's

place of employment called the debt collector to complain.  *Id.*  There was also testimony that one

of the debt collectors told Driscol that he "put a contract out on [her]" and advised her that she had

"better be careful."  *Id.*  Driscol ended up resigning from work and was afraid to leave her house

after the threats.  *Id.*  Eventually, she moved out of state because she and her husband were so afraid.

*Id.*  While there is no evidence that Cook made as many calls to London's work as the debt collectors

made in *Driscol*, and there is no evidence of early morning or late evening phone calls, the court

finds that the number of harassing phone calls coupled with the threat of jail was unreasonable and

would be highly offensive to a reasonable person.

31.    "Damages for mental suffering are recoverable without the necessity of showing actual

physical injury in a case o f willful invasion of the right of privacy because the injury is essentially

mental and subjective, not actual harm done to the plaintiff's body."  *Billings*, 489 S.W.2d at 861.

"Generally, an award of mental anguish damages [for a tort claim] must be supported by direct

evidence that the nature, duration, and severity of mental anguish was sufficient to cause, and caused,

either a substantial disruption in the plaintiff's daily routine or a high degree of mental pain and

distress."  *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 231 (Tex. 2011) (discussing the availability

of mental anguish damages when employees of a cemetery moved a body to a different plot without permission from the family).

32.     While London was worried and concerned following the phone calls from Cook at Set 'Em Free, there is no evidence or allegations that her mental anguish disrupted her daily routine or caused a high degree of mental pain and distress.  Thus, London is not entitled to mental anguish damages against Davis d/b/a Set 'Em Free or Set 'Em Free Bail Bonds, Inc. for this tort.

33.     However, the degree of mental anguish following the calls from TDA Investigations caused London a high degree of mental pain and distress.  TDA Investigations' calls were an unreasonable intrusion into her solicitude and would have been highly offensive to a reasonable person.  Thus, London has met her burden with regard to her claim that Gums, Thomas, and Kennedy invaded her privacy by intrusion.

## H.     One Satisfaction Rule

34.     "The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury."  *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991). There can be but one recovery for one injury, and the fact that . . . there may be more than one theory of liability[] does not modify this rule."  *Id.* at 8.  "When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief."  *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988).  "If a plaintiff pleads alternate theories of liability . . . , a judgment that awards damages based on more than  one theory does not amount to double recovery if the theories of liability arise from two separate and distinct injuries, and there has been a separate and distinct finding of damages on both theories of liability."  *Household Credit Servs., Inc.*, 989 S.W.2d at 80.  Here, the court finds that the most favorable relief for London's

injuries caused by Davis d/b/a Set 'Em Free is the relief available under the TDCPA and the most favorable relief available for London's injuries caused by Gums, Kennedy, and Thomas is the relief available under the Texas DTPA.  Since London is entitled to attorney's fees and costs under either statute and the claims against the defendants cannot be appropriately segregated, a joint and several award against of fees and costs against all defendants is appropriate.

## III. Conclusion

In conclusion, London met her burden of showing that Davis d/b/a Set 'Em Free or her employees, as her agents, and Set 'Em Free Bail Bonds, Inc. violated the TDCPA and, consequently, the Texas DTPA.  London did not, however, show that she had legally cognizable mental anguish due to these violations, and she did not provide proof of any economic damages.  Regardless, she is entitled to statutory damages under the TDCPA of $100, a permanent injunction, and attorney's fees and costs.  London failed to demonstrate that she had sufficient mental anguish to meet her burden of proof or recover damages for the tort claims asserted against Davis d/b/a Set 'Em Free and Set 'Em Free Bail Bonds, Inc.  With regard to Gums, Thomas, and Kennedy, taking all of the well-pleaded allegations in the complaint as true and considering the testimony at trial, London has met her burden of demonstrating she is entitled to damages under all of the claims asserted against Gums, Kennedy, and Thomas.  After taking into consideration the one satisfaction rule, the court will enter a final judgment containing the damage award against the defaulting defendants and Davis d/b/a Set 'Em Free concurrently with these findings of fact and conclusions of law.  The court will also enter a permanent injunction concurrently with these findings of fact and conclusions of law.

Signed at Houston, Texas on February 10, 2014.

Gray H. Miller
United States District Judge